```
               UNITED STATES DISTRICT COURT
                  DISTRICT OF MINNESOTA
                  Civil No. 14-70(DSD/JJK)
```

Elizabeth Fair, Trustee for
the Estate of Edmond, Fair,
deceased,

       Plaintiff,

v.                                                     **ORDER**

Ryan Soliday, individually and
in his official capacity as a
Brooklyn Center Police Officer,

       Defendant.

      Elizabeth Fair, 1638 Upton Avenue North, Minneapolis, MN
      55411, pro se.

      Jon K. Iverson, Esq., Iverson, Reuvers and Condon, 9321
      Ensign Avenue South, Bloomington, MN 55438, counsel for
      defendant.

This matter is before the court upon the motion for summary judgment by defendant Ryan Soliday, a Brooklyn Center police officer. Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants the motion.

## BACKGROUND

This civil rights dispute arises out of the death of Edmond Fair,[1] who was shot by Soliday following a traffic stop. During

---

[1] Plaintiff Elizabeth Fair brings this case as trustee for the estate of her son, Edmond Fair. To avoid confusion, the court will refer to Elizabeth Fair as "plaintiff" and Edmond Fair as "Fair."

the early morning hours of August 23, 2013, Soliday and his partner Katie Deering were patrolling a high crime area of Brooklyn Center in a marked squad car. Benner Aff. Ex. 1, at 2-4 (Soliday Statement). As they drove through a Motel 6 parking lot, a motel security guard approached them and asked them to help evict unruly motel guests. Id. at 4-5; Benner Aff. Ex. 2, at 5 (Deering Statement); see also Compl. ¶ 13. By the time the officers arrived at the motel room it was empty. Soliday Statement at 5; Deering Statement at 5.

As the officers returned to their squad car, they witnessed a minivan accelerate rapidly out of the motel parking lot. Soliday Statement at 5; Deering Statement at 6. The officers found it suspicious that the van left so quickly because in their experience it is common for evicted hotel guests to talk to the police and to try to get their money back. Soliday Statement at 5; Deering Statement at 5. The officers followed the minivan, believing that its occupants were the evicted hotel guests. Soliday Statement at 5. Given the eviction and hasty exit from the hotel property, the officers decided to pull the van over after the driver failed to properly signal a turn. Id. at 6. The driver almost stopped, but then proceeded forward at five to ten miles per hour. Id.; Deering Statement at 6.

When the van finally stopped, Soliday approached the driver's side and Deering - concerned that someone might jump out of the van

- approached the passenger side.  Soliday Statement at 6; Deering Statement at 6.  The officers observed several people in the backseat and a passenger in the front seat.  Soliday Statement at 6; Deering Statement at 7.  Soliday explained to the driver - later identified as Fair - why he was pulled over.  Soliday Statement at 6.  Fair acknowledged that he and his passengers had been in a dispute at the motel.  Id.  Soliday observed that Fair appeared to be nervous because he was "obviously avoiding eye contact ... [h]is voice was hesitant and ... his hands and arms were nervously shaking."  Id.; see also Benner Aff. Ex. 5, at 6 (Washington Statement) (stating that Fair "went crazy" and "started flipping out" after being pulled over).  When asked for identification, Fair told Soliday that he did not have it with him.  Soliday Statement at 6.  Fair told Soliday that he was from Milwaukee and gave him a fake name.  Id.; Washington Statement at 18; Brenner Aff. Ex. 6, at 10 (Tucker Statement).

Soliday next asked Fair to get out of the vehicle due to Fair's suspicious behavior.  Soliday Statement at 6.  Fair consented to a pat down, during which Soliday found an identification card identifying him as Edmond Fair.  Id. at 7. Soliday then told Fair to sit on the curb in front of the squad car.  Id.  Soliday initially decided not to handcuff Fair because he feared that doing so would escalate the already tense situation. Id.  Soliday asked Fair why he lied about his name and Fair told

him that there were petty warrants out for his arrest and that he did not want to go back to jail. Id.; Brenner Aff. Ex. 4, at BC 279; Washington Statement at 7. Fair then became increasingly agitated, repeatedly stating that he did not want to go back to jail. Soliday Statement at 7; Tucker Statement at 11. Fair also began rocking back and forth and wringing his hands. Soliday Statement at 7. Soliday tried to diffuse the situation by telling Fair that he would not be arrested on a petty warrant. Id.; Brenner Aff. Ex. 4, at BC 278; Washington Statement at 10. Fair became more nervous and agitated, however, and Soliday concluded that he needed to handcuff Fair immediately. Soliday Statement at 7.

Expecting that Fair would resist arrest, Soliday silently indicated that Deering should draw her taser and she did so. Id.; Deering Statement at 7. Soliday then placed a handcuff on Fair's left wrist and took hold of his right wrist. Soliday Statement at 8; Deering Statement at 7. Fair resisted and a scuffle ensued. Soliday Statement at 8; Deering Statement at 8; Tucker Statement at 21; Washington Statement at 7, 19, 21-22; see also Benner Aff. Ex. 3[2]. Soliday was unable to place the handcuff on Fair's right wrist. Soliday Statement at 8; Deering Statement at 8. Deering

---

[2] Exhibit 3 is the dashboard and side camera video taken during the incident. Although the video does not clearly show every moment of the incident, it supports Soliday's version of events.

4

pointed the taser at Fair and warned him that she would tase him if he did not calm down.  Deering Statement at 8; Brenner Aff. Ex. 4, at BC 279; Washington Statement at 22.  Fair tried to break free from the officers, and Deering tased him without effect.  Soliday Statement at 8; Deering Statement at 8; Washington Statement at 22-24; Tucker Statement at 11; Benner Aff. Ex. 7, at 11-12 (Jordan Statement).  Deering then attempted to take control of Fair's hands and the struggle continued, ultimately causing Fair and the officers to slide down the slope of an embankment.  Soliday Statement at 8; Deering Statement at 9.

During the struggle, Fair took Deering's Taser and pulled the trigger, shocking both Deering and Soliday.  Soliday Statement at 8; Deering Statement at 9.  As Soliday continued to try to subdue Fair he saw that Fair had dropped the taser and was grabbing at Deering's duty belt.  Soliday Statement at 8.  Deering felt her duty belt being lifted on the left side, which was where her gun was located.  Deering Statement at 10.  Soliday asked Deering whether Fair was trying to grab her gun and she said yes.  Id.; Soliday Statement at 8.  Fearing for both of their lives, Soliday let go of Fair and drew his gun.  Soliday Statement at 9. Fair continued to struggle with Deering and Soliday saw that Fair was "violently trying to rip an item from [her] belt, which [he] feared was her handgun."  Id.  Soliday then shot Fair on the left side of his torso.  Id.  Fair was immediately incapacitated and later died

5

from his injuries. See Soliday Statement at 9; Deering Statement at 10. Plaintiff alleges that Fair was fully handcuffed when he was shot, Compl. ¶¶ 17, 18, 22, but the record does not support this allegation. See Soliday Statement at 8; Deering Statement at 8; Jordan Statement at 9, 25-26; Benner Aff. Ex. 8, at 9-11, 21 (Donnell Statement); Benner Aff. Ex. 16.

On January 7, 2014, plaintiff filed a complaint against Soliday, alleging excessive force under 42 U.S.C. § 1983 and wrongful death under Minnesota law. Soliday moves for summary judgment. Plaintiff, who is now pro se, has not submitted an opposition to the motion.[3]

## DISCUSSION

### I.   Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

---

[3] On July 2, 2014, the court permitted plaintiff's counsel to withdraw based on his representation that facts discovered after the complaint was filed would not allow him to represent plaintiff and comply with the Rules of Professional Conduct. ECF No. 37, at 3. The court allowed plaintiff additional time to secure new counsel and respond to the motion, but she has failed to do so. See ECF No. 39.

(1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. A party asserting that a genuine dispute exists — or cannot exist — about a material fact must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

Even where, as here, a motion for summary judgment is unopposed, the court still must determine that the moving party is entitled to judgment as a matter of law. Interstate Power Co. v. Kansas City Power & Light Co., 992 F.2d 804, 807 (8th Cir. 1993). It is nonmovant's responsibility, however, to "set forth specific facts showing that there is a genuine issue for trial." Stroeder v. Smith, No. 10-4115, 2013 WL 354112, at *3 (D. Minn. Jan. 3, 2013)(citation omitted) report and recommendation adopted, No. 10-

4115, 2013 WL 354203 (D. Minn. Jan. 29, 2013). The court is not required to "scour the record to determine whether there are issues of fact that preclude summary judgment." Id.; see also Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs., 558 F.3d 731, 735 (8th Cir. 2009) (stating that where summary judgment was unopposed, "[i]t was not the District Court's responsibility to sift through the record to see if, perhaps, there was an issue of fact.").

## II. Excessive Force

Soliday argues that he is immune from suit under the doctrine of qualified immunity. "[Q]ualified immunity protects [law enforcement] officers from personal liability under § 1983 insofar as their conduct does not violate clearly established ... constitutional rights of which a reasonable person would have known." Baribeau v. City of Minneapolis, 596 F.3d 465, 473 (8th Cir. 2010) (alteration in original) (citation and internal quotation marks omitted). The court applies the doctrine of qualified immunity in a manner that "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir. 2005) (quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991)).

To determine whether Soliday is entitled to qualified immunity, the court first considers whether the alleged facts demonstrate that the conduct of Soliday violated a constitutional

8

right and, if so, whether the right claimed was clearly established at the time of the alleged injury. Howard v. Kan. City Police Dep't, 570 F.3d 984, 988 (8th Cir. 2009). "If the answer to either question is no," then Soliday is entitled to qualified immunity. Doe v. Flaherty, 623 F.3d 577, 583 (8th Cir. 2010).

Section 1983 is "not itself a source of substantive rights." Albright v. Oliver, 510 U.S. 266, 271 (1994) (citation and internal quotation marks omitted). As a result, a plaintiff must "identify the specific constitutional right allegedly infringed." See id. (citing Graham v. Connor, 490 U.S. 386, 394 (1989)). Here, plaintiff claims that Soliday violated Fair's Fourth Amendment right to be free from unreasonable seizure. This right protects against the use of excessive force in the apprehension or detention of a person.[4] See Graham, 490 U.S. at 395. "To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances." Brown v. City of Golden Valley, 574 F.3d 491, 496 (8th Cir. 2009) (citations and internal quotation marks omitted). "[T]he right to make an arrest ... necessarily carries with it the

---

[4] "Apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." Hassan v. City of Minneapolis, 489 F.3d 914, 919 (8th Cir. 2007) (citation omitted).

right to use some degree of physical coercion or threat thereof to effect it." Cook v. City of Bella Villa, 582 F.3d 840, 849 (8th Cir. 2009) (quoting Graham, 490 U.S. at 396).

When evaluating the reasonableness of an officer's use of force, a court considers "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396 (citation omitted). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. (citing Terry v. Ohio, 392 U.S. 1, 20-22 (1968)). The "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Id. at 396-97; see Brown, 574 F.3d at 496.

Here, the facts viewed in a light most favorable to plaintiff show that Soliday's use of deadly force was not unreasonable. By all accounts, Fair was nervous and agitated at the prospect of going back to jail. It is also undisputed that Fair actively resisted being handcuffed and taken into custody and that he physically struggled with the officers for more than one minute. See Benner Aff. Ex. 4, at BC 274; id. Ex. 3. The officers' unsuccessful

attempts to subdue him with a taser and physical force increased the intensity and uncertainty of an already volatile situation.  These facts, coupled with both officers' belief that Fair was reaching for Deering's gun, support Soliday's perception that Fair was an immediate and significant threat to his and Deering's safety.  Under these circumstances, Soliday's actions were objectively reasonable and did not violate Fair's Fourth Amendment rights.  The court is satisfied that no reasonable juror could conclude otherwise.  As a result, the doctrine of qualified immunity shields Soliday from plaintiff's claim under § 1983.

**III. Wrongful Death**

Plaintiff also brings a wrongful death claim under Minn. Stat. § 573.02.  Under Minnesota law, "[t]he official immunity doctrine provides that a public official charged by law with duties which call for the exercise of his judgment or discretion is not personally liable to an individual for damages unless he is guilty of a willful or malicious wrong."  Elwood v. Cnty. of Rice, 423 N.W.2d 671, 677 (Minn. 1988) (citation and internal quotation marks omitted).  The decision to use deadly force is a "discretionary decision entitling a police officer to official immunity absent a willful or malicious wrong."  Hassan, 489 F.3d at 920 (citing Maras v. City of Brainerd, 502 N.W.2d 69, 77 (Minn. Ct. App. 1993)).  "In determining whether an official has committed a malicious wrong, [the court] consider[s] whether the official has intentionally

11

committed an act that he ... had reason to believe is prohibited." <u>State by Beaulieu v. City of Mounds View</u>, 518 N.W.2d 567, 571–72 (Minn. 1994).  This "contemplates ... an objective inquiry into the legal reasonableness of an official's actions."  <u>Id.</u> at 571.

Here, the record establishes that Soliday's use of deadly force was reasonable and lacking in malice, and no reasonable fact-finder could conclude otherwise.  As noted, the record shows that Soliday and Deering had every reason to believe they were in significant danger, and that using deadly force against Fair was reasonable and necessary.  As a result, plaintiff's wrongful death claim also fails.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1. The motion for summary judgment [ECF No. 14] is granted; and

2. This action is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  September 8, 2014

             <u>s/David S. Doty</u>
             David S. Doty, Judge
             United States District Court